J-S19003-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF E.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.M., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 81 WDA 2021 |

Appeal from the Order Entered December 8, 2020
In the Court of Common Pleas of Jefferson County Civil Division at No(s):
CP-33-DP-0000045-2019

BEFORE:   DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED: JULY 15, 2021**

Appellant, A.M. ("Mother"), appeals from the December 8, 2020 Order that changed the permanency goal of her child, E.M. ("Child"), from Reunification to Adoption.  Upon review, we affirm.

Mother has a history of illegal drug use.  Mother is the biological parent of Child, who was born in June 2017.  Child's father is unknown.  On August 5, 2019, the Jefferson County Children and Youth Services ("Agency") obtained emergency custody of Child after Mother was incarcerated for violating the conditions of her probation.[1]  Mother had left then-two-year-old Child with a friend, and Child's maternal grandmother ("Maternal Grandmother") picked Child up from the friend's house.  Upon investigation,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] It is unclear from the record why Mother was incarcerated or how she violated probation.

the Agency deemed Maternal Grandmother to be an inappropriate placement resource for Child because she appeared to be under the influence of drugs and refused a drug test. The trial court adjudicated Child dependent on August 28, 2019, and Child was placed in foster care. The court ordered Mother to participate in drug and alcohol and parenting programs.

In April or May 2020, Mother was participating in a work release program at Jefferson County Jail when she relapsed by taking gabapentin, a prescription drug that was not prescribed to her, and was transferred from Jefferson County Jail to Muncy to serve a term of five to ten years' incarceration.[2] Mother subsequently qualified for the Quehanna State Drug Treatment Program ("Drug Treatment Program"), and was transferred there to participate in intensive drug and alcohol treatment, and potentially mitigate her incarceration sentence.

Over the next sixteen months, the trial court held multiple permanency review hearings. At the December 20, 2020, permanency review hearing, the Agency caseworker Rebecca Sallack recommended that Child's permanency goal be changed to Adoption. N.T. Hearing, 12/20/20, at 5. Ms. Sallack testified that Mother was in the middle of completing the four-month Drug Treatment Program, would be released at the end of the month, would be required to complete two months of inpatient drug treatment upon release, and, subsequently, would be required to complete six months of outpatient

---

[2] It is unclear from the record whether this was Mother's original sentence or imposed as a re-sentence for probation violations.

drug treatment. *Id.* Ms. Sallack testified that, upon release, Mother planned to move back in with her paramour ("Paramour"), who was previously investigated as a placement resource for Child but who had discontinued contact with the Agency. *Id.*

Ms. Sallack informed the court that Mother has remained in contact with Child; previously Mother's phone calls to Child were inconsistent but since she has been transferred to the Drug Treatment Program her phone calls have been more consistent and she currently calls Child three times a week. *Id.* at 11. Ms. Sallack stated that Mother has had a few video visits but was forced to miss a few when her unit was on lockdown for COVID-19; in-person visitation is not allowed due to COVID-19 restrictions. *Id.* at 11-12. Ms. Sallack testified that given Mother's timeline for release, they would not be able to start supervised visits for several months, and before the Agency would even be able to consider overnight visits, Child will have been in placement for two years, will be four years old, and will have been in placement for approximately half his life. *Id.* at 6, 7.

Ms. Sallack stated that Child is in a pre-adoptive foster home, that he is bonded "very much" with his foster parents and foster siblings, and that foster family is open to an Act 101[3] open adoption. *Id.* at 6. Ms. Sallack testified that a permanency goal of adoption is in Child's best interest, that he "needs

---

[3] 23 Pa.C.S. §§ 2731-42 (commonly referred to as Act 101, providing an option for adoptive parents and birth relatives to enter into a voluntary agreement for ongoing communication or contact).

this permanency in his life[,]" and that it would be detrimental to remove Child from a home that has been "stable, consistent, and permanent" in Child's life for over sixteen months. *Id.* at 7.

Mother, who was represented by counsel, did not present any evidence at the hearing. At the conclusion of the hearing, after hearing testimony from Ms. Sallack and the guardian *ad litem's* agreement with a goal change to Adoption, the trial court changed Child's permanency goal to Adoption.

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

Mother raises the following issue for our review: "Whether the lower court erred in changing the permanency goal to [A]doption?" Mother's Br. at 4.

We review a trial court's decision to change a child's permanency goal to Adoption for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). In order to conclude that the trial court abused its discretion, this Court "must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record." *Interest of H.J.*, 206 A.3d 22, 25 (Pa. Super. 2019) (citation omitted). Our standard of review in dependency cases requires this Court "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law." *R.J.T.*, 9 A.3d at 1190.

This Court is "not in a position to make the close calls based on fact-specific determinations." *Id.* Rather, "we must defer to the trial judges who see and hear the parties and can determine the credibility to be placed on each witness and, premised thereon, gauge the likelihood of the success of the current permanency plan." *Id.* Notably, even if this Court "would have made a different conclusion based on the cold record, we are not in a position to reweigh the evidence and the credibility determinations of the trial court." *Id.*

The overarching purpose of the Juvenile Act, which governs goal change requests, is "[t]o preserve the unity of the family whenever possible or to provide another alternative permanent family when the unity of the family cannot be maintained." 42 Pa.C.S. § 6301(b)(1). At each dependency review hearing, the trial court must consider, *inter alia*, the continuing necessity for and appropriateness of the child's placement, the extent of compliance with the permanency plan, the extent of progress made toward alleviating the circumstances which necessitated the child's placement, the appropriateness and feasibility of the current placement goal for the child, the likely date the goal might be achieved, and the child's safety. 42 Pa.C.S. § 6351(f). The focus of goal change proceedings, like all dependency proceedings, is on "the safety, permanency, and well-being of the child and the best interests of the child must take precedence over all other considerations." *H.J.*, 206 A.3d at 25. "The parent's rights are secondary in a goal change proceeding." *In re R.M.G.*, 997 A.2d 339, 347 (Pa. Super. 2010) (citation and internal quotation marks omitted).

The agency has the burden to show that a goal change would serve the child's best interests. **R.M.G.**, 997 A.2d at 347. If reunification with the child's parent or guardian is not in the child's best interest, the trial court may determine that adoption is the appropriate permanency goal. **H.J.**, 206 A.3d at 25; 42 Pa.C.S. § 6351(f.1)(2). Notably, "[a]doption may not be an appropriate permanency goal if severing an existent parent-child bond would have a detrimental effect on a child." **H.J.**, 206 A.3d at 25. Further, "[b]ecause the focus is on the child's best interests, a goal change to adoption might be appropriate, even when a parent substantially complies with a reunification plan." **R.M.G.**, 997 A.2d at 347.

This Court has held that placement in a pre-adoptive home should be completed within 18 months. **H.J.,** 206 A.3d at 25. "A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." **In re Adoption of M.E.P.**, 825 A.2d 1266, 1276 (Pa. Super. 2003) (citation omitted). "Thus, even where the parent makes earnest efforts, the "court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." **R.M.G**., 997 A.2d at 347 (citation and internal quotation marks omitted).

In her sole issue, Mother avers that the trial court abused its discretion when it changed Child's permanency goal to Adoption. Mother's Br. at 11. Mother argues that she has demonstrated a bond with Child, has maintained contact and communication, is within two months of release from

- 6 -

incarceration and inpatient drug treatment, and could advance reunification efforts during her outpatient treatment without COVID-19 restrictions limiting her access to programs and visitation. *Id.* at 7.

As stated above, when deciding whether to change a child's permanency goal, the focus is on the child's best interest rather than the parent's compliance and hopes for the future. A court must consider the Section 6351 factors to determine what is in child's best interest, as the trial court did in this case. Instantly, the trial court heard uncontroverted testimony from Ms. Sallack that Child deserved permanency and that a goal change to Adoption was in Child's best interest. N.T. Hearing, 12/20/20, at 7. The trial court opined:

> Maintaining a goal of reunification . . . would have left [Child] in a tenuous position in terms of achieving permanency. As of December 2020, Mother was at least 3 months from beginning supervised visits and, even assuming a best-case scenario, several more months from being fully reunified with her son. The [c]ourt was unwilling to assume a best-case scenario, though, not only because of Mother's own history, but also because her post-release home plan had her moving in with her ex-[fiancée]/current boyfriend [] who, as the record reflects, suddenly quit communicating with [the Agency] after proposing himself as a kinship placement option for [Child] and working several months toward making that happen. . . . All things considered, then, what the [c]ourt ascertained from [Child]'s 16-month history as a dependent child was that changing his permanency goal to adoption was the only way to guarantee for him lasting stability and its attendant psychological and emotional benefits. The [c]ourt submits that the record supports that decision, and, therefore, that it did not abuse its discretion.

Trial Ct. Op., dated 3/30/21, at 2. The record supports the trial court's findings.

While Mother argues that she has demonstrated a bond with Child, Mother failed to present any evidence to support this claim during the hearing. On the contrary, the trial court heard uncontroverted evidence that Child is bonded with his foster family and that it would be detrimental to Child to sever that bond. The trial court made a finding that "Child has bonded with each member of the [foster] family and has done well both physically and emotionally. . . . Child has internalized the [foster family] as his 'safe place.' At the same time, the [foster family has] actively fostered a positive relationship between [Child] and Mother and, whereas it is their desire to make him a permanent part of their family, have thereby demonstrated their commitment to doing what is best for him." Trial Ct. Op. at 2. The record supports the trial court's findings and we discern no abuse of discretion.

In conclusion, the trial court did not abuse its discretion when it changed Child's permanency goal to Adoption. The record supports the trial court's findings and we decline to reweigh the evidence. Accordingly, we affirm.

Order affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/15/2021